Eric Nielson #5327
Laura Nielson #15008
G. ERIC NIELSON & ASSOCIATES
4790 S. Holladay Blvd.
Holladay, Utah 84117
Phone: (801) 424-9088
Fax:    (801) 438-0199
ericnielson@ericnielson.com
lauranielson@ericnielson.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CATHERINE H. and C.M., <br><br> Plaintiffs, <br><br> vs. <br><br> BLUE CROSS BLUE SHIELD of ILLINOIS, <br><br> Defendant. | **COMPLAINT** <br><br> Case No. 4:23-cv-00013-PK <br><br> Judge <br><br> Magistrate Judge Paul Kohler |

**COME NOW** Catherine H. and C.M., collectively, individually, and through their undersigned counsel, complain and allege against the above-captioned defendants as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Catherine H. ("Carrie") is a natural person residing in Cook County, Illinois. They are covered by a fully insured plan, the Thornton Fractional Twp High School District Plan ("the Plan"), provided through Carrie's employer and provided by Blue Cross Blue Shield of Illinois ("BCBSIL").

2. Plaintiff C.M. is a resident of Cook County, Illinois. As a beneficiary of his mother's health insurance plan, he received treatment at Diamond Ranch Academy ("Diamond

1

Ranch"), a licensed residential treatment facility in Hurricane, Utah from February 10, 2019 through August 31, 2019 under one member ID and September 1, 2019 through September 5, 2019 under a separate member ID.

3. The Plan is an employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et. seq.

4. This Court has jurisdiction over this matter and venue is appropriate pursuant to 29 U.S.C. §1132(e)(2) and 29 U.S.C. § 1391(c) because the treatment took place in the State of Utah and the appeals were written by a company located in Salt Lake City, Utah.

5. Plaintiffs seek payment of C.M.'s denied claims from February 10, 2019 through September 5, 2019 for treatment rendered at Diamond Ranch, pursuant to 29 U.S.C. §1132(a)(1)(B).

6. Plaintiffs seek injunctive relief pursuant to 29 U.S.C. §1132(a)(3) and pursuant to the Mental Health Parity and Addiction Equity Act of 2008 ("the Parity Act").

7. Plaintiffs also seek an award of prejudgment interest and attorney's fees pursuant to 29 U.S.C. §1132(g).

## FACTUAL BACKGROUND

8. C.M. has struggled with a history of Oppositional Defiance Disorder ("ODD"), Attention-Deficit/Hyperactivity Disorder ("ADHD"), and Generalized Anxiety Disorder ("GAD").

9. After attempts at lower levels of care, C.M. was admitted to Diamond Ranch on February 10, 2019.

//
//

## PRE-LITIGATION PROCESS FOR C.M.'S TREATMENT AT DIAMOND RANCH

10. Claims were submitted to the Plan by the Plaintiffs for C.M.'s treatment at Diamond Ranch.

11. In a series of Explanations of Benefits ("EOBs"), with various dates, BCBSIL denied C.M.'s treatment at Diamond Ranch. The EOBs denial reasons included, in part:

> These services are not eligible according to your benefit booklet.
>
> You must obtain certification before beginning this course of treatment.
>
> Your claim has been denied. We have requested additional information from your provider which is required in order to process this claim.

12. On February 3, 2020, the family submitted a Level One Member Appeal.

13. In the appeal, the family pointed out that BCBSIL was accredited by the Utilization Review Accreditation Commission ("URAC"), which means BCBSIL had committed itself to a high level of appeal review accuracy and accountability. The family quoted requirements from a copy of the URAC Accreditation Guide.

14. The family outlined, per the URAC Accreditation Guide, that C.M.'s diagnoses required a reviewing clinician who was board certified in child and adolescent psychiatry and had relevant experience treating adolescents diagnosed with C.M.'s specific diagnoses. The family also requested to see the specific clinical evidence that BCBSIL relied on to make their denial decision.

15. Then, the family outlined what their plan did cover. Carrie said she couldn't find any exclusions in her entire plan document that excluded intermediate behavioral healthcare in a residential treatment center. She also pointed out that Diamond Ranch met the Plan's definition of Provider, which states, in part:

> PROVIDER … means any health care facility (for example, a Hospital or Skilled Nursing Facility) or person (for example, a Physician or Dentist) or

entity duly licensed to render Covered Services to you and operating within the scope of such license.

16. Carrie stated that Diamond Ranch met her Plan's definition of provider and that Diamond Ranch was properly licensed by the State of Utah to provide residential services to children and adolescents.

17. BCBSIL also stated that the treatment needed to preauthorized and stated it as a denial reason, to which Carrie pointed out that the Plan states the following, in part:

> Should you fail to preauthorize or notify Blue Cross and Blue Shield as required in the PREAUTHORIZATION REVIEW provision within this section of this Certificate, you will then be responsible for the first $500 of the Hospital or facility charges for an eligible Inpatient stay.

18. Carrie advised that not seeking pre-authorization for C.M.'s treatment at Diamond Ranch was a $500 penalty, not a full reduction of benefits.

19. Finally, Carrie advised that it appeared BCBSIL was violating the Parity Act. C.M.'s treatment at Diamond Ranch is an analogous level of care to their intermediate medical health benefits, such as skilled nursing facility services or rehabiliatative services. Carrie pointed out that BCBSIL was not applying a similar treatment limitation to mental health and substance use disorder benefits as they were to medical health benefits by denying C.M.'s claims.

20. The family compared the Plan's definition of residential treatment center ("RTCs") vs the Plan's definition of skilled nursing facility ("SNFs") or hospice care program and they found discrepancies in the Plan's requirements. By requiring SNFs and hospice care programs to only by licensed and to provide covered services within the scope of their license while requiring RTCs to be licensed, provide covered services within the scope of their license, but also provide 24-hour medical monitoring and 24-hour onsite nursing is a nonquantitative treatment limitation ("NQTL") and is a violation of the Parity Act.

21. In a letter dated March 27, 2020, BCBSIL upheld their denial of C.M.'s treatment at Diamond Ranch. The denial letter stated, in part:

> Under section; "Definitions Section", in the member's benefit book: "RESIDENTIAL TREATMENT CENTER… means a facility setting offering a defined course of therapeutic intervention and special programming in a controlled environment which also offers a degree of security, supervision, structure and is licensed by the appropriate state and local authority to provide such service. It does not include half-way houses, supervised living, group homes, wilderness programs, boarding houses or other facilities that provide primarily a supportive environment and address long term social needs, even if counseling is provided in such facilities. Patients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service for patients with Mental Illness and/or Substance Use Disorders. Blue Cross and Blue Shield of Illinois required that any Mental Illness and/or Substance Use Disorder Residential Treatment Center must be licensed in the state where it is located, or accredited by a national organization that is recognized by Blue Cross and Blue Shield of Illinois as set forth in its current credentialing policy, and otherwise meets all other credentialing requirements set forth in such policy."

22. The appeal was signed by Mary B., an "Appeals Specialist II," despite the family requesting a board certified doctor with experience with C.M.'s specific diagnoses.

23. The family exhausted their appeal rights with BCBSIL.

## FIRST CAUSES OF ACTION

**(Claim for Benefits Under 29 U.S.C. §1132(a)(1)(B)) and Claim for Equitable Relief Pursuant to 29 U.S.C. §1132(a))**

24. ERISA imposes higher-than-marketplace standards on the Plan and other ERISA fiduciaries. It sets forth a special standard of care upon a plan fiduciary, namely that the administrator discharges all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1).

25. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that plan administrators provide a "full and fair review" of claim denials. 29 U.S.C. §1104(a)(1)(D) and §1133(2).

26. Defendant's actions or failures to act constitute a breach of its fiduciary duties to the family under 29 U.S.C. §1104 and §1133 in the following ways: 1) by failing to set forth the specific reasons for C.M.'s claim denial, written in a manner calculated to be understood by the family; 2) by failing to provide a "full and fair review," as anticipated in ERISA's claims processing regulations, of the denial of the C.M.'s claim; 3) by developing and relying upon internal practices and policies that improperly restricted coverage in contravention of Plaintiffs' health insurance plans, ERISA, and the Parity Act; and 4) by failing to discharge all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits.

## SECOND CAUSE OF ACTION

**(Claim for Violation of the Parity Act Under 29 U.S.C. §1132(a)(3))**

27. The Parity Act is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the Parity Act.

28. The Parity Act requires that if a group health plan provides both medical and surgical benefits as well as mental health or substance use disorder benefits, then it may not apply any "treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant ... treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(2)(i) (amended Jan. 13, 2014); *see also* IFRs Under the Parity Act, 75 Fed. Reg. at 5413.

29. The Parity Act also requires that if a plan "provides mental health or substance use disorder benefits in any classification of benefits..., mental health or substance use disorder benefits must be provided in every classification in which medical/surgical benefits are provided." 29 C.F.R. § 2590.712(c)(2)(ii).

30. Impermissible nonquantitative treatment limitations under the Parity Act include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

31. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan restricted for C.M.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does the Plan restrict coverage of medical/surgical conditions based on medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner the Plan restricted coverage of treatment for C.M. at Diamond Ranch.

32. Specifically, the Plan's reviewers utilized internal processes and procedures that may have placed a limitation on the scope of services available for intermediate behavioral health care, while not limiting the scope of services available for intermediate medical or surgical benefits.

33. When the Plan receives claims for intermediate-level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. The Plan evaluated C.M.'s mental health claims using criteria that deviate from generally accepted standards of medical practice.

This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

34. In this manner, the Defendant violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the criteria utilized by the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

35. The violations of the Parity Act by the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

36. A declaration that the actions of the Defendant violates the Parity Act;

37. An injunction ordering the Defendant to cease violating the Parity Act and requiring compliance with the statute;

38. An order requiring the reformation of the terms of the Plan and the criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with the Parity Act;

39. An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of their violations of the Parity Act;

40. An order requiring an accounting by the Defendant of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendant's violations of the Parity Act;

41. An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiffs as make-whole relief for their loss;

42. An order equitably estopping the Defendant from denying the Plaintiffs' claims in violation of the Parity Act; and

43. An order providing restitution from the Defendant to the Plaintiffs for their loss arising out of the Defendant's violation of the Parity Act.

44. 45. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A.

45. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

## **RELIEF**

46. WHEREFORE, the Plaintiffs seek relief as follows:

47. Judgment in the total amount that is owed for C.M.'s medically necessary treatment at Diamond Ranch under the terms of the Plan, plus pre- and post-judgment interest to the date of payment;

48. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

49. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

50. For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 9th day of February, 2023.

G. ERIC NIELSON & ASSOCIATES

   /s/ Laura Nielson
Laura Nielson
*Attorney for Plaintiffs*